**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF VIRGINIA**
Alexandria Division

| | |
|---|---|
| In re: | ) |
| | ) |
| RYAN YUHO CHONG | ) Case No. 12-15332-BFK |
| EUN JUNG LEE | ) Chapter 7 |
| | ) |
| Debtors | ) |

**MEMORANDUM OPINION**

This matter comes before the Court on the Motion of the Debtor, Ryan Yuho Chong, for contempt sanctions against BVCII, LLC ("BVCII"), and Dong Hwan Kim, for alleged violations of the automatic stay. Docket No. 30. BVCII filed an Opposition to the Motion. Docket No. 35. The Court held an evidentiary hearing on March 20, 2013. Mr. Chong was present and represented by counsel. BVCII also was present by counsel. Mr. Kim was present in person, but was not represented by counsel. The Court, having heard the evidence and the arguments of the parties, makes the following findings of fact and conclusions of law.

**Findings of Fact**

1.    Prior to filing for bankruptcy protection in this Court, Mr. Chong operated a sole proprietorship, the Tip Top Cleaners located at 9570-K Burke Road, Burke, Virginia 22015 (the "Premises"). The Premises originally were leased to Mr. Kim, doing business as Village Center Cleaners, in 1992, by BVCII's predecessor, Burke Village Center II Limited Partnership. BVCII Exs. 1-2.

2.    On November 30, 2010, Mr. Kim assigned the Lease to the Debtor, with the consent of BVCII. BVCII Ex. 2. Mr. Kim remained as a Guarantor on the Lease and was personally obligated to BVCII for the rent and other charges due for the Premises. BVCII Ex. 2, p. 3.

1

3.	Mr. Kim also sold to the Debtor the equipment and fixtures used in the business, in exchange for a $100,000 Confessed Judgment Note and Security Agreement, both of which are dated as of November 30, 2010. BVCII Exs. 3-4.

4.	According to Mr. Chong's testimony, the business fared poorly, netting Mr. Chong an average of $200 per week, or $800 per month, in profits, after paying the landlord, the utilities, Mr. Kim's Note, and the other expenses of operating the business. Mr. Chong was unable to support his family on the profits from the business and decided to file for personal bankruptcy.

5.	On August 31, 2012 (the "Petition Date"), Mr. and Mrs. Chong filed a voluntary bankruptcy petition under Chapter 7 in this Court. Docket No. 1.

6.	The Debtors also filed a Chapter 7 Debtor's Individual Statement of Intention. Docket No. 18, p.24. In the Statement of Intention, the Debtors indicated an intent to surrender "the property securing the debt" for the $100,000 business loan from Mr. Kim. Docket No. 18.

7.	Mr. Chong claimed his interest in Tip Top Cleaners as exempt on his Schedule C. BVCII, Ex. 5, p.7. He assigned this interest a value of $1.00. BVCII Ex. 5, p.7.

8.	The first meeting of creditors was held on October 24, 2012. Docket No. 16.

9.	On November 16, 2012, BVCII filed a Motion for Relief from the Automatic Stay with respect to the Premises. Docket No. 19.

10.	On December 5, 2012, the Court granted BVCII's Motion, without opposition from the Debtor. Docket No. 24. The Order Modifying the Stay was entered on December 7, 2012. Docket No. 26.

11.	Upon being advised that the stay had been lifted, a representative of BVCII's management company, along with Mr. Kim, appeared at the Premises on the same day as the

Order was entered, December 7, 2012. The management company representative advised Mr. Chong that BVCII was changing the locks. Mr. Chong was given less than an hour to gather his personal belongings and to vacate the Premises, which he did.

12. BVCII's managing agent called Mr. Chong later that day, and asked for help with the clothing that remained at the Premises, much of which was still wet from the cleaning process. To his credit, Mr. Chong returned to the Premises and helped hang up the clothing.

13. All of the clothes ultimately were returned to their owners, or were discarded. BVCII did not charge the owners for the return of their clothing.

14. Mr. Kim caused the Premises to be leased to a new tenant shortly thereafter.

15. On December 10, 2012, Mr. McCarthy, the Chapter 7 Trustee, filed a Request for Asset Notice. Docket No. 28. On December 13, 2012, the Clerk issued a Notice of Need to File Claims. Docket No. 33.

16. The Debtors were discharged on December 13, 2012. Docket No. 32.

17. At the evidentiary hearing on Mr. Chong's Motion for contempt sanctions, Mr. Chong recounted the above events. He itemized the damages that he claimed were caused by BVCII's actions in taking control of the Premises before the 14 day stay of the Court's relief from stay Order expired. Specifically, he claimed: (a) $3,364.56 in damages for clothing that he had in the Premises on December 7, 2012, and for which he was never paid; (b) an additional, estimated $4,500 in damages for amounts he claimed he would have earned during the 14 day stay (Mr. Chong estimated that, within the 14 days, the dry cleaning business would have been open for 10 days); and (c) his attorney's fees and costs in connection with the Motion.[1]

---

[1] The disposition of this matter makes it unnecessary to make any findings of fact with respect the Debtor's claimed damages. The Court was at a loss, however, to understand how Mr. Chong could claim some $4,500 in

3

**Conclusions of Law**

The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334 and the Order of Reference of the U.S. District Court for this District of August 15, 1984. This is a core proceeding, within the meaning of 28 U.S.C. § 157(b)(2)(A) (matters concerning the administration of the estate), and (G) (motions to terminate, annul or modify the automatic stay). Venue is appropriate in this Court pursuant to 28 U.S.C. § 1409(a).

The automatic stay is one of the fundamental protection devices that the Bankruptcy Code provides to debtors. "It gives the debtor a breathing spell from his creditors. It stops all collection efforts, all harassment, and all foreclosure actions. It permits the debtor to attempt a repayment or reorganization plan, or simply to be relieved of the financial pressures that drove him into bankruptcy." *Grady v. A.H. Robins Co.*, 839 F.2d 198, 200 (4th Cir. 1988) (quoting H.R. Rep. No. 95-595, at 340-41 (1977) and S. Rep. No. 95-989, at 54-55 (1978), reprinted in U.S.C.C.A.N. 5787, 5840 & 6296-97).

The scope of the automatic stay is defined by Section 362(a) of the Bankruptcy Code. 11 U.S.C. § 362(a). It provides in relevant part:

(a) Except as provided in subsection (b) of this section, a petition filed under section 301, 302, or 303 of this title, or an application filed under section 5(a)(3) of the Securities Investor Protection Act of 1970, operates as a stay, applicable to all entities, of—

  (1) the commencement or continuation, including the issuance or employment of process, of a judicial, administrative, or other action or proceeding against the debtor that was or could have been commenced before the commencement of the case under this title, or to recover a claim against the debtor that arose before the commencement of the case under this title;

  (2) the enforcement, against the debtor or against property of the estate, of a judgment obtained before the commencement of the case under this title;

---

damages for a period of 10 to 14 days, when he testified that his net profits, after paying all of his expenses, averaged $200 per week.

> (3) any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate;
>
> (4) any act to create, perfect, or enforce any lien against property of the estate;
>
> (5) any act to create, perfect, or enforce against property of the debtor any lien to the extent that such lien secures a claim that arose before the commencement of the case under this title;
>
> (6) any act to collect, assess, or recover a claim against the debtor that arose before the commencement of the case under [the Bankruptcy Code.]

11 U.S.C. § 362(a)(1)-(6). Congress intended that the definition of "claim" in the Code be as broad as possible. *Grady*, 839 F.2d at 200.

The Bankruptcy Code provides a remedy for any individual injured by a willful violation of the automatic stay. It states that such an individual "shall recover actual damages, including costs and attorneys' fees, and, in appropriate circumstances, may recover punitive damages." 11 U.S.C. § 362(k)(1). In order to constitute willfulness, the creditor need not act with specific intent but must only commit an intentional act with knowledge of the automatic stay. *Budget Serv. Co. v. Better Homes*, 804 F.2d 289, 292–93 (4th Cir. 1986); *Gordon Props., LLC v. First Owners Ass'n of Forty Six Hundred (In re Gordon Props., LLC )*, 460 B.R. 681, 690 (Bankr. E.D. Va. 2011); *In re Seaton*, 462 B.R. 582, 592 (Bankr. E.D. Va. 2011); *Cherry v. Arendall (In re Cherry)*, 247 B.R. 176, 187 (Bankr. E.D. Va. 2000).

The Respondents in this case, BVCII and Mr. Kim, make two related arguments in response to the Debtor's Motion for Contempt Sanctions. First, BVCII argues that the Debtor indicated in his Statement of Intention that he would surrender the property that secured Mr. Kim's loan. BVCII argues that the loan was secured not only by the equipment and fixtures, but by Mr. Chong's leasehold interest. This, in its view, was personal property which the Debtor was required to redeem or surrender within 45 days of the filing of the case, pursuant to 11

5

U.S.C. § 521(a)(6). Failing that, BVCII says, the automatic stay expired as a matter of law when the 45 days ran out. The second argument, jointly made by BVCII and Mr. Kim, is that the Debtor lacks standing to maintain a claim for a violation of the automatic stay with respect to property of the estate. The Court will address both arguments, in turn.

　　*1.　11 U.S.C. § 521(a)(6)*

Section 521(a)(6) of the Bankruptcy Code requires a debtor to redeem or surrender personal property within 45 days of filing a bankruptcy petition. It provides as follows:

> The debtor shall . . . in a case under chapter 7 of this title in which the debtor is an individual, not retain possession of personal property as to which a creditor has an allowed claim for the purchase price secured in whole or in part by an interest in such personal property unless the debtor, not later than 45 days after the first meeting of creditors under section 341(a), either—
>
> 　　(A) enters into an agreement with the creditor pursuant to section 524(c) with respect to the claim secured by such property; or
>
> 　　(B) redeems such property from the security interest pursuant to section 722;
>
> . . .
> If the debtor fails to so act within the 45-day period referred to in paragraph (6), the stay under section 362(a) is terminated with respect to the personal property of the estate or of the debtor which is affected, such property shall no longer be property of the estate, and the creditor may take whatever action as to such property as is permitted by applicable nonbankruptcy law, unless the court determines on the motion of the trustee filed before the expiration of such 45-day period, and after notice and a hearing, that such property is of consequential value or benefit to the estate, orders appropriate adequate protection of the creditor's interest, and orders the debtor to deliver any collateral in the debtor's possession to the trustee.

Relying on Section 521(a)(6), BVCII argues that the leasehold is considered to be personalty, under applicable non-bankruptcy law. This is an accurate statement under Virginia law. *See Barnes v. VNB Mortg. Corp.*, 230 Va. 4, n.6 (1985); *Burns v. The Equitable Assocs.*, 220 Va. 1020, 1029-30 (1980). The Security Agreement includes in its description of collateral "leasehold interest/improvements," twice in the same paragraph. BVCII Ex. 4, ¶ 1(a). However, BVCII's argument is flawed in two important respects. First, the Security Agreement is an

agreement between Mr. Kim and Mr. Chong. BVCII is not a party to the Security Agreement and, therefore, is not a secured party within the ambit of Section 521(a)(6). Consequently, BVCII lacks standing to assert that the automatic stay expired pursuant to Section 521(a)(6). Only Mr. Kim, as the secured party, would have standing to make this argument.

More fundamentally, the Debtor's claim is that BVCII interfered with his possessory interest in the Premises (i.e., the real property), not that BVCII interfered with his leasehold interest. Section 521(a)(6) uses the term "personal property as to which a creditor has an allowed claim for the purchase price secured in whole or in part by an interest in such personal property." The notion of a possessory interest in a leasehold interest (as opposed to real property) is too abstract to be useful in these circumstances. The Debtor simply remained in possession of the Premises, essentially as a holdover tenant, notwithstanding his obligation to surrender the property to the Trustee under Section 521(a)(4) of the Bankruptcy Code (discussed below). The Debtor does not claim a possessory interest in his leasehold interest; he claims that he had a possessory interest in the Premises and that BVCII's precipitous actions interfered in his possession of the Premises.[2]

For the foregoing reasons, the Court rejects BVCII's argument that Section 521(a)(6) of the Code provides a defense to the Debtor's claim of a willful violation of the automatic stay.

   2. *The Debtor's Standing*

Alternatively, BVCII and Mr. Kim assert that the Debtor lacks standing to claim a violation of the automatic stay with respect to property of the estate. The Court agrees.

---

[2] Mr. Chong also makes the argument that BVCII, having moved for relief from the automatic stay, is judicially estopped from claiming that the automatic stay had been terminated prior to the time that it took possession of the premises. The Court need not reach the judicial estoppel argument, in light of its disposition of BVCII's Section 521(a)(6) argument, above.

The Court granted relief from the automatic stay with respect to the Premises on December 7, 2012. Docket No. 26. The Order granting relief did not waive the provisions of Bankruptcy Rule 4001(a)(3), which provides: "[a]n order granting a motion for relief from an automatic stay made in accordance with Rule 4001(a)(1) is stayed until the expiration of 14 days after the entry of the order, unless the court orders otherwise." Fed. R. Bankr. P. 4001(a)(1). BVCII and Mr. Kim did not await the expiration of the fourteen days under Rule 4001(a)(3). Rather, once they learned that an Order lifting the automatic stay had been entered, they entered the Premises the same day, on December 7, and evicted Mr. Chong.

The Debtor asserts that his possessory interest in the Premises gives him standing to maintain an action for damages during the 14 day stay of the Relief from Stay Order, i.e., from December 7, 2012, through and including December 21, 2012. BVCII, on the other hand, maintains that the Debtor lacks standing to assert a violation of the automatic stay with respect to property of the estate. It is certainly true that a debtor's possessory interest in property is sufficient to trigger the automatic stay. *In re Nasir*, 217 B.R. 995, 997 (Bankr. E.D. Va. 1997). This widely accepted proposition, however, does not answer the question of whether the Debtor in this case is an "individual injured" by the landlord's violation of the stay—in other words, whether the Debtor had a protectable interest under Section 362(k) of the Bankruptcy Code.

We begin with fundamental principles of constitutional standing. In order to have standing under Article III of the Constitution, a party must establish:

> (1) an injury in fact (*i.e.*, a "concrete and particularized" invasion of a "legally protected interest"); (2) causation (*i.e.*, a "'fairly . . . trace[able]'" connection between the alleged injury in fact and the alleged conduct of the defendant); and (3) redressability (*i.e.*, it is "'likely'" and not "merely 'speculative'" that the plaintiff's injury will be remedied by the relief plaintiff seeks in bringing suit).

*Sprint Commc'ns Co., L.P. v. APCC Servs., Inc.,* 554 U.S. 269, 273-74 (2008) (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992)).[3]

More specifically, Section 362(k) of the Bankruptcy Code provides that "an individual injured" by any willful violation of the automatic stay may recover actual damages, including costs and attorney's fees, and in appropriate circumstances, may recover punitive damages. 11 U.S.C. § 362(k). The question here is whether the Debtor is an "individual injured" by BVCII's actions in re-taking the Premises before the 14 day stay expired.[4]

Section 521(a)(4) of the Code provides that a debtor shall "if a trustee is serving in the case . . . , surrender to the trustee all property of the estate and any recorded information, including books, documents, records, and papers, relating to property of the estate, whether or not immunity is granted under section 344 of [the Bankruptcy Code.]" 11 U.S.C. § 521(a)(4). In other words, Mr. Chong was obligated to turn over (in the language of the statute, "surrender") possession of the Premises to the Chapter 7 Trustee immediately upon filing the case.

Upon the filing of the Debtors' petition, the Chapter 7 Trustee had 120 days to assume or reject the Lease with BVCII. 11 U.S.C. § 365(d)(4). If he failed to do so, then the lease would be "deemed rejected, and the trustee shall immediately surrender the non-residential real property to the lessor." *Id.* The Debtor filed his petition on August 31, 2012; the 120 days under Section 365(d)(4) did not expire until December 29, 2012. As of the eviction date of December

---

[3] Bankruptcy Courts are Article I Courts, but they are also units of Article III District Courts. Principles of standing under Article III, therefore, apply equally in bankruptcy courts. *In re Mushroom Transp., Co., Inc.,* 486 B.R. 148, 153 (Bankr. E.D. Pa. 2013); *In re Trujillo*, 485 B.R. 238, 252 (Bankr. D. Colo. 2012); *In re Bucchino*, 439 B.R. 761, 770 n.10 (Bankr. D. N.M. 2010).

[4] The Court further notes that the Debtors received their discharge on December 13, 2012. Docket No. 32. Thus, the automatic stay would have terminated as to the Debtors on that date, which was six days after the events of December 7. 11 U.S.C. § 362(c)(2)(C). The question remains, however, as to whether the Debtors have standing to maintain a claim for the violation of the automatic stay that occurred on December 7.

7, the Trustee had not moved to assume the Lease. Further, since the 120 days had not yet passed, the Lease had not yet been rejected by the operation of law. Therefore, under the Bankruptcy Code, the Trustee had the possessory interest in the Premises.

Moreover, the Debtor plainly indicated his intent to surrender the Premises on his Chapter 7 Debtor's Individual Statement of Intention. Docket No. 18. He used the Premises for three additional months without making any payment to the landlord. These facts can be contrasted usefully with those of *In re Park*, 275 B.R. 253 (Bankr. E.D. Va. 2002). In *Park*, the Debtors had leased commercial real estate from Federal Realty Investment Trust ("Federal"). *Id.* at 254. The Debtors continued to pay Federal after filing their petition for Chapter 7 bankruptcy protection. *Id.* They argued that the rejection only "served to abandon the *trustee's* rights and burdens with respect to the lease, leaving the debtors' rights and burdens intact." *Id.* at 255. This court held that, because the Debtors continued to assert their interest in the real property by paying Federal, "rejection by a trustee must be understood as affecting only the rights and liabilities of the bankruptcy estate, not the debtor. . . . [T]he rejection of the lease by the trustee did not, standing alone, terminate the debtors' leasehold interest." *Id.* at 259-60. In the present case, on the other hand, the Debtor did not intend to keep the Premises, and did not make any payments to the landlord.

The issue of whether debtors have standing to maintain claims for violations of the automatic stay with respect to property of the estate has been the subject of numerous recent cases, many of which have involved bank accounts at Wells Fargo. Wells Fargo, as a matter of bank policy, froze debtors' accounts when they filed for bankruptcy protection. This wasn't done to effectuate a setoff (*see Citizens Bank of Md. v. Strumpf*, 516 U.S. 16 (1995)), but because Wells Fargo was unable to determine whether the accounts were exempt or not and wanted to

avoid the potential for double liability, to the debtor and to the trustee. The majority of these cases have held that the debtors did not have standing to maintain claims for violations of the automatic stay with respect to property of the estate. *See Wells Fargo Bank, N.A. v. Jiminez*, 406 B.R. 935 (D.N.M. 2008); *In re Lee,* 2011 WL 5452830 (Bankr. D. Alaska 2011); *In re Phillips*, 443 B.R. 63 (Bankr. M.D.N.C. 2010); *Bucchino v. Wells Fargo Bank, N.A. (In re Bucchino),* 439 B.R. 761 (Bankr. D.N.M. 2010); *In re Young*, 439 B.R. 211 (Bankr. M.D. Fla. 2010) [hereinafter collectively referred to as "the Wells Fargo cases"].

One exception to the foregoing cases was *In re Mwangi,* 432 B.R. 812 (B.A.P. 9th Cir. 2010). In *Mwangi*, the Ninth Circuit Bankruptcy Appellate Panel ("B.A.P.") held that the Debtors' claim of exemption in their Wells Fargo account gave them a sufficient interest in the account in order to give them standing to maintain a claim against Wells Fargo for violating the automatic stay. The Ninth Circuit B.A.P. described the Debtors' interest in the account as inchoate, but sufficient to grant them standing.

On remand, the Debtors filed an adversary proceeding against Wells Fargo. The bankruptcy court dismissed the adversary proceeding for lack of standing. The dismissal was affirmed by the district court. *Mwangi v. Wells Fargo (In re Mwangi),* 473 B.R. 802 (D. Nev. 2012).[5] The district court rejected "the proposition that a debtor's mere claim of an exemption removes that property from the estate." *Id*. at 809. The district court further held that the Debtors could not state a plausible claim for relief based solely on their claim of exemptions in the property. *Id*. at 810.

---

[5] The precedential effect of a B.A.P. decision remains the subject of some controversy within the Ninth Circuit. *See Bank of Maui v. Estate Analysis, Inc*., 904 F.2d 470 (9th Cir. 1990) (effect of B.A.P. decision not sufficient to impose sanctions); *In re Arnold*, 471 B.R. 578, 588 (Bankr. C.D. Cal. 2012) (holding that the Ninth Circuit B.A.P.'s decision in *Friedman v. P+P, LLC (In re Friedman),* 466 B.R. 471 (9th Cir. B.A.P. 2012), concerning the absolute priority rule in individual Chapter 11 cases, was not binding precedent).

The issue of standing is further illustrated by two recent cases reaching opposite results, *Cook v. Wells Fargo, N.A. (In re Cook),* 2012 WL 1356490 (B.A.P. 10th Cir. 2012), *aff'd*, 2013 WL 1297590 (10th Cir. 2013), and *In re Trujillo*, 485 B.R. 238 (Bankr. D. Colo. 2012). The *Cook* case was not among the above Wells Fargo cases (despite the fact that Wells Fargo was the Defendant). Rather, in *Cook*, the Debtor had licensed certain intellectual property rights, and the rights were then pledged to Wells Fargo as security for a loan. *In re Cook*, 2012 WL 1356490, at *1. Rejecting the holding of the Ninth Circuit B.A.P. in *Mwangi*, the Tenth Circuit B.A.P. held that the Debtor's claim of an exemption in the intellectual property rights was insufficient to confer standing. The court held:

> Upon the filing of a bankruptcy petition, an estate is created, which is comprised of all legal or equitable interests of the debtor in property as of the commencement of the case. The Trustee is the representative of the estate in a Chapter 7 case. The Trustee shall collect and reduce to money the property of the estate. It is the Trustee to whom the obligation to turnover property of the estate runs. And it is the Trustee who has the right to use property of the estate. A Chapter 7 debtor has none of these rights.
> . . .
> Because the IP belongs to the estate, Cook has no interest in the outcome of any alleged stay violations. In other words, Cook has not been injured. Rather, Cook's bankruptcy estate, a separate legal entity from Cook, is the alleged injured party.

*Id.* at *9 (citations omitted).[6]

In contrast, the court in *Trujillo* held that the Debtor had standing to maintain a claim for a violation of the automatic stay occasioned by a law firm's refusal to release a garnishment lien on the Debtor's pre-petition wages. *In re Trujillo*, 485 B.R. at 254. After a thoughtful survey of the case law, including the Wells Fargo cases, the court held that the Debtors did have standing. *Id.* at 247-54. The court focused on the language of Section 362(k) and held: "The test for standing . . . should be tethered only to the type of legal interests intended to be protected by the

---

[6] In *Cook*, the Trustee had filed a Notice of Abandonment. However, the Bankruptcy Court held that the Notice was insufficient to abandon the property, and the 10th Circuit B.A.P. agreed. *Id.*, at *6.

automatic stay. As long as those interests have been injured, any individual harmed by the violation has standing to assert a claim." *Id.* at 253.

Despite the opposite results in the two cases, the reasoning of *Cook* and *Trujillo* is reconcilable. In *Cook*, the issue involved intellectual property rights, something over which the Chapter 7 Trustee unquestionably had control from the outset of the case. In *Trujillo*, the Debtor asserted an interest in at least some of the wages being withheld post-petition.[7] Regardless of whether this Court would reach the same result on the facts in *Trujillo*, the *Trujillo* court was correct in its view that a court must determine the nature of the interests affected by the stay violation, in order to determine whether the debtor has suffered a "concrete and particularized" invasion of a "legally protected interest" (i.e., has Article III standing), and whether the debtor is an "individual injured" by the creditor's stay violation (i.e., has standing under Section 362(k)). It isn't always the case that debtors lack standing to maintain stay violations. The reference to "an individual" injured by a stay violation in Section 362(k) is broad enough to encompass both the estate's interest and the Debtor's interest in property.

For example, had these Premises been the Debtor's residence, the result unquestionably would be different. This is because a debtor does not have the option of abandoning his residence immediately upon filing a Chapter 7 petition. Further, the Chapter 7 trustee almost never has any interest in assuming an unexpired residential lease. In *Trujillo*, the court said:

> consider the application of this rule to a typical case in which the debtor owns his home, subject to encumbrances that exceed its value. Assume that a lien holder willfully proceeds with the foreclosure action post-petition, despite actual knowledge of the debtor's bankruptcy filing. . . . [F]ew courts would refuse to allow the chapter 7 debtor to bring this matter to the court's attention.

---

[7] In Virginia, the Debtor would have an exemption of up to 75% of wages earned pre-petition. *See, e.g., In re Brugueras*, 2012 WL 6055603 (Bankr. E.D. Va. 2012) (Debtor's claim of exemptions in wages garnished pre-petition, and paid over to creditor post-petition, gave rise to automatic stay violation).

13

485 B.R. at 253-54.

In contrast, the Debtor in this case had the obligation to abandon the Premises as soon as he filed his Chapter 7 petition.  This is what Section 521(a)(4) plainly requires.  Just as importantly, the Debtor had the "breathing spell" envisioned by the automatic stay, and then some.  The Debtor occupied the premises post-petition for over three months (August 31 through December 7) without paying any rent, utilities or other business expenses.  In essence, the Debtor was a squatter in the Premises.  If anyone, the Chapter 7 Trustee (but not the Debtor) was the individual with the legal right to occupy these Premises through the rejection of the lease under Bankruptcy Code Section 365(d)(4) on December 29.

The Court will not hesitate to enter sanctions in appropriate cases, where creditors do not respect the 14 day stay imposed by Bankruptcy Rule 4001(a)(3).  This, however, is not such a case.  The Court will deny the Debtor's Motion for lack of standing.

**Conclusion**

For the foregoing reasons, the Court will deny the Debtor's Motion for Contempt.  A separate Order shall issue.

Date: Apr 30 2013

Alexandria, Virginia

/s/ Brian F. Kenney

Brian F. Kenney
United States Bankruptcy Judge

Entered on Docket: May 1 2013

Copies to:

Ryan Yuho Chong
Eun Jung Lee
7819 Valleyfield Drive
Springfield, VA 22153
Debtor

Richard G. Hall, Esquire
7369 McWhorter Place
Suite 412
Annandale, VA 22003
Counsel for the Debtors

Paul Schrader, Esquire
Fullerton & Knowles, P.C.
12642 Chapel Road
Clifton, VA 20124
Counsel to BVC, II, LLC

Dong Hwan Kim
13438 Purple Dulce Court
Centerville, VA 20120

Jack Frankel, Esquire
Office of the United States Trustee
115 So. Union Street, P-210
Alexandria, VA 22314

Kevin R. McCarthy, Esquire
1751 Pinnacle Drive Suite 1115
McLean, VA 22102
Chapter 7 Trustee